*Fairfield,*
June, 1843.

Ingersol
*v.*
Knowlton.

------◆------

## THE CITY OF BRIDGEPORT *against* THE HOUSATONUC RAILROAD COMPANY:

### IN ERROR.

In *May*, 1836, a rail-road company was incorporated, with power to construct a rail-road from the *Northern* line of the state to the city of *B.* On the 2nd of *March*, 1837, the city of *B.* voted, that it was expedient to aid in the construction of such rail-road, by subscribing 100,000 dollars to the capital stock of the company, and at the same time appointed an agent to make such subscription, and agents also to raise that sum, by procuring loans of money, at an interest not exceeding six *per cent. per annum*, with power to pledge the credit of the city therefor, by issuing its securities. The subscription was accordingly made on the books of the company; which was confirmed, by the city, on the 25th of *March*; when a further subscription of 50,000 dollars was authorized, and the agents directed, as before, to raise the requisite funds. At the same time, the city voted, that a petition should be presented to the legislature for the passage of an act validating its former proceedings on this subject, and praying that such further powers might be conferred on the city as should be necessary to carry those proceedings into effect. Such a petition being presented, the legislature, in *May*, 1838, granted the prayer thereof, and ratified, confirmed, established and made obligatory on said city, and the citizens thereof, all their former proceedings, in the same manner and to the same extent, as if all the necessary powers for that purpose had been conferred by the charter of the city; and also empowered the city, at any legal meeting, specially warned for that purpose, to adopt such other measures, as, in their opinion, might be necessary to carry into effect all the former proceedings, and to provide for the negotiation and payment of the subscriptions, loans and securities; and providing, that the securities, which had been, or might be, issued, should be obligatory on the city, to all intents and purposes, and might be enforced and collected, in the same manner and to the same extent, that debts lawfully contracted by towns in this state, are enforced, under the existing laws. This legislative act, in conformity with a proviso contained in it, was afterwards duly accepted and approved, by the freemen of the city.

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

In an action of debt on one of the bonds of the city, executed by its agents, duly appointed and empowered, under the seal of the corporation, and issued for stock in the rail-road company, to recover interest, payable semi-annually, which had become due, it was held, 1. that the legislative act of 1838 (aside from any constitutional infirmity,) gave validity to the previous proceedings of the city and its agents, whether they were otherwise valid, or not; 2. that such act was not inoperative, as being retroäctive, unjust or unconstitutional; 3. that the city was thereby empowered to issue its bonds for stock in the rail-road company; 4. that the bonds were not rendered invalid, because they were issued in full of the subscription, while the stock was payable by future instalments; nor because the interest was payable semi-annually.

THIS was an action of debt on bond, brought originally by *The Housatonuc Rail-Road Company* against *The City of Bridgeport,* before a justice of the peace, and appealed to the county court. In the latter court, the defendants pleaded *Non est factum ;* on which issue was joined, and closed to the court; and on that issue the cause was tried, at *Fairfield, December* term, 1842.

The plaintiffs, to prove that the instrument declared on was the act and deed of the defendants, offered the following evidence.

1. " *Bridgeport City* six per cent. stock loan.
" No. 67.　　　　　*For* 150,000 *Dollars.*

" Know all men, by these presents, that the mayor, aldermen, common council and freemen of the city of *Bridgeport,* are indebted, and hold themselves firmly bound, unto the *Housatonuc Rail-Road Company,* or its assigns, in the sum of one thousand dollars, payable on the 15th day of *June,* one thousand eight hundred and forty-eight, with interest thereon, from the date hereof, at the interest of six *per cent. per annum,* payable semi-annually, upon the presentation and delivery of the *coupons* for the same, severally hereto annexed, to wit, on the 15th day of *December,* and the 15th day of *June,* in each year, until the payment of said principal sum.

" Loan for $150,000.

" The stock is created by virtue of, and in conformity with, the provisions of the resolution of the General Assembly of the state of *Connecticut,* passed at the session thereof, held at *New-Haven,* on the first *Wednesday* of *May,* 1838, upon the petition of the mayor, aldermen, common council and freemen of said city of *Bridgeport,* and of resolutions of the corporation of said city of *Bridgeport,* passed on the 2nd day

of *March*, 1837, and on the 5th day of *June*, 1838, and is transferable and deliverable by assignment hereon ; and the faith, property and effects of the city of *Bridgeport*, and of the citizens thereof, are hereby pledged for the punctual payment of the principal and interest, at the *New-York State Bank*, in the city of *New-York*, or at such other place in said city as may be designated by three months' public notice, to be given by the corporation of the city of *Bridgeport*, in one or more newspapers published in the city of *New-York.*

*Fairfield,*
June, 1843.
————
The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

 " In testimony whereof, the subscribers, agents of the city of *Bridgeport*, specially appointed for that purpose, have
[L. S.]    signed this bond, and have caused the seal of the
corporation of the city of *Bridgeport* to be thereunto
affixed, the 15th day of *June*, one thousand eight hundred and thirty-eight.

[Signed.]    *Henry Dutton,*
*F. C. Bassett,* } Agents."
*L. DeForest,*

 2. Also the following *coupon :*
 " The mayor, aldermen,common council and freemen of the city of *Bridgeport*, hereby acknowledge that there will be due to bearer thirty dollars, being half a year's interest, payable on the 15th day of *June*, 1842, on bond No. 67, of the six *per cent.* loan of said city, issued on the 15th day of *June*, 1838.

[Signed,]    *Henry Dutton*, Agent."

 3. Also the following indorsement upon said bond :
 " For value received, the *Housatonuc Rail-Road Company*, by its president and secretary, doth hereby assign and transfer the within bond, No. 67, to      of      or assigns.

*Wm. P. Burrall,* President.

*Wm. H. Noble,* Secretary."
 4. Also the following vote of said city, passed at a meeting of the mayor, aldermen, common council and freemen of said city, on the 2nd day of *March,* 1837, purporting, on the records of said city, to be a legal meeting :
 " *Voted,* That it is expedient for the corporation of said city, to aid in the construction of the said road, (*Housatonuc Rail-Road Company,*) by subscribing for the sum of one hundred thousand dollars of the capital stock of the *Housatonuc Rail-Road Company.*
 " *Voted,* That the mayor of said city be, and hereby is, em-

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

powered, to subscribe on the books of said company, in behalf of said city, the sum of one hundred thousand dollars, and pledge the credit of the city therefor.

"*Voted,* That *Charles Hill, Charles Foot* and *Alanson Hamlin,* Esqrs., be agents to negotiate for and procure the funds necessary to pay the above subscription, by a loan or loans, at an interest not exceeding six *per cent. per annum,* and to pledge the credit of said city therefor, by issuing certificates for the same, by promissory notes, or by securities in any other form ; all and any of which securities shall be obligatory on said city, if signed by any two of said agents, in behalf of said city, payable in not less than ten nor more than twenty years.

"*Provided,* however, and the aforesaid subscription shall be on the express condition, that the *Southern* termination of said road, as proposed to be constructed by *Alfred Bishop,* shall be on the *West* side of *Bridgeport* harbour, and *South* of the *Bridgeport* bridge."

5. Also the following vote of said city, purporting, on the records of said city, to be at a legal meeting of said city, and legally warned for the purpose therein contained :

"*Voted,* That *Charles Hill* be, and he hereby is appointed an agent, in addition to the mayor of the city of *Bridgeport,* to subscribe one hundred thousand dollars to the capital stock of the *Housatonuc Rail-Road,* in behalf of the city of *Bridgeport,* on condition that the first track shall be constructed and finished on the *West* side of *Pequannoc* river, commencing at some point *South* of the *West* end of *Bridgeport* bridge, in the city of *Bridgeport,* and continuing *West* of *Bridgeport* harbour and the *Pequannoc* river, as far *North* as *Fairchild's* paper-mill, the signature of either of whom shall be binding to said amount of stock on said city.

"*Also Resolved,* That the committee appointed by the city of *Bridgeport,* on the 2nd day of *March,* 1837, to negotiate the loan of one hundred thousand dollars to the city of *Bridgeport,* and to issue scrip therefor, be and they are hereby authorized to pledge the stock subscribed by said city in the *Housatonuc Rail-Road Company,* as collateral security to the said scrip, or such other city securities as they are authorized to give, by the resolutions passed at said city meeting.

6. Also the following vote of said city, at a meeting pur-

porting, on the records of said city, to be legally warned and held, on the 25th day of *March*, 1837:

*Fairfield*,
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

" *Also Voted*, That *Charles Hill, Charles Foote* and *Alanson Hamlin*, Esqrs., having been appointed by said city to borrow one hundred thousand dollars, which is subscribed in the books of the *Housatonuc Rail-Road Company*, be required to give good and sufficient bond, to the acceptance of the board of common council, before they are authorized so to execute their office."

7. Also the following from the record of said city, purporting to have been passed at a legal meeting of said city, legally warned for that purpose :

" Whereas, at a legal meeting of the mayor, aldermen, common council and freemen of the city of *Bridgeport*, held on the 2nd day of *March*, 1837, with reference to the *Housatonuc Rail-Road Company*, it was resolved as follows— [here, setting forth the votes of said meeting, in the words of the same, as above described.]

" And whereas, at a legal meeting of said city, held on the 20th day of *March*, 1837, it was resolved—[here follows the resolution in the words as above set forth, upon said meeting of *March* 20th.]

" And whereas, at a legal city meeting of said city, held on the 25th day of *March*, 1837, it was voted—[here follows the vote as above set forth under said meeting.]

" And whereas the said *Charles Hill*, as the agent for and in behalf of said city, and in virtue of said authority given to him by the foregoing proceedings of said city, did, on or about the 10th day of *March*, 1837, make a subscription on the books of said *Rail-Road Company*, on condition as specified in the proceedings of the city, at a meeting thereof, held on the 20th day of *March*, 1337, as aforesaid :

" And whereas the said *Charles Hill, Charles Foote* and *Alanson Hamlin*, did, in pursuance of the power vested in them as aforesaid, issue scrip to the amount of ten thousand dollars, on the said 20th day of *March*, 1837, obligating this city for the said sum of ten thousand dollars :

" And whereas it is of the highest importance to the interests of this city, and of the said *Rail-Road Company*, that the proceedings of this city, with reference to the said *Rail-*

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

*Road Company,* should be explicit, valid, binding and un-
questionable :

" 1st. Therefore, *Resolved,* That the subscription of one
hundred thousand dollars, made as aforesaid by the said
*Charles Hill,* in the name and behalf of this city, with the
condition thereunto annexed, be approved, adopted and con-
firmed, as a subscription made by this city.

" 2d. *Resolved,* That the issuing of scrip, by *Charles Hill,*
*Charles Foote* and *Alanson Hamlin,* as aforesaid, to the
amount of ten thousand dollars, be approved, adopted and
confirmed, and that said scrip be acknowledged to be obliga-
tory on this city, according to the tenor thereof.

" 3d. *Resolved,* That *Samuel Simons* be an agent for this
city, to subscribe, and he is hereby fully authorized and em-
powered to subscribe, on the books of said company, in be-
half of said city, the sum of fifty thousand dollars, and that
the credit of the city of *Bridgeport* be pledged therefor, upon
the same conditions specified in the subscription of one hundred
thousand dollars heretofore made by this city, and upon the
further condition that said road be permanently located to
come to, and terminate at, *Bridgeport,* by the 19th day of
*July,* 1838.

" 4th. *Resolved,* That *Henry Dutton, Freeman C. Bassett,*
and *Lockwood DeForest,* be agents to negotiate for and pro-
cure the funds necessary to pay the subscription aforesaid, by
loan or loans, at an interest not exceeding six *per cent. per*
*annum,* and to pledge the credit of the city therefor, by
issuing certificates for the same, by promissory notes, or by
securities in any other form, all or any of which securities
shall be obligatory on said city, if signed by either of said
agents in behalf of said city, payable in not less than ten, nor
more than twenty years ; and that said agents shall give good
and sufficient bond, to the satisfaction of the common council
of said city, before they are authorized to execute their office ;
and that all authority heretofore given to any other agents for
the above-mentioned purposes, shall cease, and is hereby
revoked.

" 5th. *Resolved,* That a petition be presented to the General
Assembly to be holden at *New-Haven,* in *May* next, to be
signed by the mayor and such of the aldermen, common coun-
cil and freemen of this city, as may choose to sign the same,

for the passage of such an act or acts as shall be necessary to give full force and validity to all the proceedings of this city with reference to said rail-road, that have heretofore been held, as specified in the preamble and resolutions at this meeting already passed, and to confer upon this city such further powers, not contained in its charter, as may be necessary and proper to carry said resolutions into full effect; and that the following be the form of said petition:

*Fairfield,*
*June, 1843.*

The City of Bridgeport
*v.*
The Housatonuc Rail-Road Company.

"To the Honourable General Assembly of the state of *Connecticut*, to be holden at *New-Haven*, on the first *Wednesday* of *May*, 1838.

"The undersigned, authorities of the city of *Bridgeport*, and freemen thereof, respectfully represent to your honourable body, that in view of the great advantages to result to said city from the termination within its limits of the *Housatonuc Rail-Road*, said city has, at various times, authorized subscriptions in its behalf to the stock of said *Rail-Road Company*, amounting in all to the sum of one hundred and fifty thousand dollars, and has authorized the negotiation of a loan or loans to meet the sums becoming due in consequence of said subscription and loan or loans, and has authorized its agents to issue its obligations therefor, based upon the credit of said city.

"Wherefore, your petitioners respectfully request your honourable body to ratify and confirm the doings of said city, as detailed in a copy of the proceedings in said city meetings, hereunto annexed, both in relation to said subscriptions and loans, and also all acts done and to be done by agents appointed in said city meetings, to carry into effect the doings of said city. And also your petitioners ask your honourable body to pass such act or acts as shall be necessary and proper to give full force and validity to all the proceedings of said city and its agents, had and to be had, both in relation to said subscription and loans; or in some other way your honourable body would grant relief. And your petitioners, as in duty bound, will ever pray."

"Upon the aforesaid petition, the General Assembly, at its session in *May*, 1838, passed the following resolution, which was here offered in evidence by the plaintiffs, in the words following:

"*Resolved by this Assembly,*

"1st. That all the proceedings of the city of *Bridgeport*,

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

with reference to the *Housatonuc Rail-Road,* as specified in the bill in form, (which bill in form recited and set forth the several resolutions and votes of said city in relation to the *Housatonuc Rail-Road Company,* heretofore referred to and above described,) be ratified, confirmed established, and made obligatory on said city of *Bridgeport* and the citizens thereof, in the same manner, and to the same extent, as if all the powers necessary to give full force and validity to the said proceedings of said city, had been expressly and specially conferred upon said city, by their charter.

" 2d. That full force, power and authority be, and the same is hereby granted to said city, at any legal meeting of the same, to be specially warned for that purpose, according to law, to adopt such *other measures, as, in the opinion of said meeting, shall be necessary and proper* to carry into effect, in a manner most conducive to the interest of said city, the proceedings of said city heretofore had with respect to said railroad, as in this bill of form is specified, and to provide for the payment of said subscriptions, and the issuing and negotiation of said loans, notes, certificates, or scrip, or such other loans, notes, certificates, scrip or other securities, as said city shall, at such meeting, authorize, order or direct, to secure the object contemplated by said subscriptions ; and said city shall be held liable and bound to pay such instalments on said stock, as may, from time to time, be assessed, according to the charter of said company ; and said instalments, and the notes, certificates, scrip, and other securities, which have been or may be issued as aforesaid, shall be obligatory on said city, to all intents and purposes, and may be enforced and collected, in the same manner, and to the same extent, that debts lawfully contracted by towns in this state, are enforced, under the existing laws of the state.

" *Provided,* nevertheless, that this resolution shall not take effect until the same shall have been submitted to and approved by the freemen of the city of *Bridgeport*, at a corporate meeting, legally warned for that purpose, and the evidence of their assent to the same, transmitted to the secretary of this state, to be by him recorded."

" Whereupon it was voted, That this meeting do approve of said resolutions of the General Assembly of this state, and do

direct the clerk of this city to transmit to the secretary of this state, a certified copy of this vote, to be by him recorded.

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

"Attest.      *Ira Sherman,* City Clerk."

8. Also the following document :

"State of *Connecticut,* }
Office of the Secretary of State, *July* 4th, 1838. }

" I hereby certify, that the foregoing copy was received at the office of the secretary of state for record, at the date last above.      "Attest.      *Royal R. Hinman,* Secretary."

9. The following vote of the city, purporting, on the records of said city, to have been passed at a legal meeting warned for that purpose :

" *Resolved,* That the agents of the city to negotiate for and procure funds to pay the subscriptions to the *Housatonuc Rail-Road,* be authorized and empowered to issue the scrip which they have been heretofore authorized to issue, to the amount, including what has been already issued, of fifty thousand dollars, and transfer the same to the *Housatonuc Rail-Road Company ;* and when said company, according to the estimates of their engineers, shall have expended one hundred thousand dollars on said road, between the city of *Bridgeport* and the centre of the town of *New-Milford,* to issue further scrip to the amount of fifty thousand dollars more ; and when said company, as aforesaid, shall have expended five hundred thousand dollars, then to issue scrip to the further amount of fifty thousand dollars more ; and transfer said scrip, in each instance, to said company ; provided said company shall, before they receive said scrip, obligate themselves to receive the same, to be applied, in the first place, to the payment of such instalments as shall, at the time of such transfer, be due and unpaid, and to pay the said city interest at six *per cent.* semi-annually, on the 10th day of *June,* and the 10th day of *December,* in each year, on the same amount of scrip which shall be received by said company, over and above said instalments ; and that the scrip so received by said company, shall be applied in payment of such instalments as shall, from time to time, be required by said company, till the whole amount of said instalments shall have been paid."

10. The following vote of the city, purporting, on the records of said city, to have been passed at a meeting of the

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

city legally warned for that purpose, held on the 20th day of *September*, 1838 :

"It was *voted*, That the agents who were appointed at a city meeting, held on the 5th day of *April*, 1838, to negotiate for and procure the funds necessary to pay the subscriptions of this city on the books of the *Housatonuc Rail-Road Company*, or either of them, be authorized and empowered in issuing scrip for that purpose, and in transferring the same to the *Housatonuc Rail-Road Company*, according to a vote of a city meeting of this city, held on the 13th day of *August*, 1838, to adopt bonds of the following form, to wit:

[The forms of the bonds and *coupons* here prescribed, are the same as the bond and *coupon* on which this suit is brought, which are stated, *ante, p.* 476, 7.]

" And the said agents, or either of them, are authorized to fill up the blanks in bonds and *coupons* of the form above described, as they shall judge proper, and affix the seal of this city to said bonds, and in transferring the same to said *Rail-Road Company*, to adjust the interest thereon, as they shall deem just and reasonable ; and they are also authorized, in issuing said scrip, to adopt such other form of bond or other securities, payable in not less than ten, nor more than twenty years, with interest not exceeding six *per cent. per annum*, payable semi-annually, as they shall judge expedient.

" Also *voted*, That the agents of the city, appointed to procure funds for the payment of the subscriptions of this city on the books of the *Housatonuc Rail-Road Company*, or either of them, be authorized to exchange or substitute bonds of the description which the said agents, by a vote of this meeting, are authorized to adopt, for any note, or notes, or other securities, which have been already issued or transferred by any agent or agents of this city, to the *Housatonuc Rail-Road Company*, on such terms as they shall judge just and reasonable ; which notes or other securities so taken up by said agents, are to be cancelled by them.

" Also *voted*, That the agents of this city appointed to procure funds for the payment of the subscription of this city on the books of the *Housatonuc Rail-Road Company*, or either of them, or such other agent as this city may appoint for that purpose, be authorized to issue bonds, notes, or other securities, in any other form, in the name of the corporation of this

city, to an amount not exceeding ten thousand dollars, payable in not less than fifteen nor more than twenty years, with interest not exceeding six *per cent. per annum*, payable semi-annually, and to negotiate the same in payment of the interest that has accrued, or may hereafter accrue, on any notes, bonds, or other securities given by the corporation of this city, by their agents, or to procure funds to pay such interest."

*Fairfield*,
June, 1843.
———
The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

11. Sundry votes of the city of *Bridgeport*, passed in city meeting, on the 29th day of *April*, 1840, and also on the 30th day of *May*, 1840, by which the city attempted to make provision for the payment of the interest on the bonds of the city, issued as aforesaid, for the purpose of showing a ratification of the bonds of said city.

12. Also the following votes of the city, passed in city meeting, on the 1st day of *June*, 1840 :

" *Resolved*, That *Lockwood Deforest, Henry Dutton*, and *Freeman C. Bassett*, the agents of the city, or either of them, or such other agents as the city may appoint for the purpose, be, and they hereby are, authorized and empowered to issue bonds, notes, or other obligations, in the name and in behalf of this city, to an amount not exceeding the interest which is now due, or which will hereafter, on or before the 15th day of *June*, 1842, become due, on such bonds as have been issued by the agents of the city to the stock of the *Housatonuc Rail-Road Company*, and on such bonds, notes, *coupons*, or other obligations, as have been issued, or which shall hereafter be issued, by the agents of said city as aforesaid, previous to said 15th day of *June*, 1842, for such interest ; which bonds, notes, or other obligations, may be made payable at such place as said agents may think proper, on said 15th day of *June*, 1842, or at any time not exceeding fifteen years thereafter, with interest at six *per cent. per annum*, payable annually or semi-annually ; and said bonds, notes, or other obligations, may be issued as aforesaid, before the interest or amount of which they are to be issued as aforesaid, becomes due.

" 2d. *Resolved*, That the treasurer of the city be authorized, by direction of the agents aforesaid, to transfer on the books of the *Housatonuc Rail-Road Company*, to any person or persons, who shall guaranty the payment of any of the bonds, notes, or other obligations, to be issued as aforesaid,

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

an amount of stock, now owned by this city, not exceeding, at par value, double the amount of the bonds, notes, or other obligations, guarantied by him or them as aforesaid, including the interest up to the time when such bonds, notes, or other obligations shall become due ; and if such bonds, notes, or other obligations, guarantied as aforesaid, shall not be paid when due, the guarantor or guarantors may sell the stock so transferred to him or them as aforesaid, and apply the avails in payment of such bonds, notes, or other obligations, guarantied as aforesaid. And said treasurer is also authorized, by direction of said agents, to transfer, from time to time, on the books of said company, to *Reuben Tweedy, Charles Deforest,* and *Ira Sherman,* an amount of stock, not exceeding in the whole, including the shares transferred as aforesaid to said guarantors, 500 shares, to be held by them in trust, to secure the bonds, notes, or other obligations, to be issued as aforesaid ; and it shall be the duty of said trustees, or the survivors of them, if such bonds, notes, or other obligations shall not be paid, when due, to sell, in such manner as they shall judge proper, a sufficient amount of the stocks held by them in trust as aforesaid, to pay such of said bonds, notes, or other obligations, as shall remain unpaid, and apply the avails in payment of the same.

" *Voted,* That *Reuben Tweedy, Roswell Lewis,* and *Ira Sherman,* be a committee to confer with the directors of the *Housatonuc Rail-Road Company,* and with other individuals, and ascertain whether any, and if any, what, arrangements can be made to dispose of the bonds specified for the interest due, or that shall hereafter become due, on the bonds of the city, on or before the 15th day of *June,* 1842."

13. A vote of the city, passed in city meeting on the 10th day of *June,* 1840, on the report of *Henry Dutton,* of the bonds issued by himself, *L. Deforest* and *Freeman C. Bassett,* agents of the city of *Bridgeport,* to pay the city subscription of one hundred thousand dollars, in which report, bond No. 67, for 1000 dollars, was declared to have been issued by them, as follows :

" *Voted,* That the doings of the agents, as above stated, be approved, and the same recorded and placed on file."

14. The following vote, taken at a city meeting, held *November,* 1840.

" *Voted*, That *Charles B. Hubbell* be appointed to vote on the city stock in the *Housatonuc Rail-Road Company*, at the annual meeting of said company, to be holden at *New-Milford*, on the 17th day of *November*, 1840."

*Fairfield June, 1843.*

The City of Bridgeport *v.* The Housatonuc Rail-Road Company.

15. Also, the following vote of said city, passed in city meeting, held the 27th day of *November*, 1841.

" *Voted*, That *Ira Sherman* be appointed an agent to vote on the city stock in the *Housatonuc Rail-Road Company*, at the annual meeting of said company, to be holden at *New-Milford*, on *Tuesday*, the 30th day of *November*, 1841."

16. A certain vote of said city, on the 15th of *August*, 1838, authorizing the agents aforesaid to issue certain scrip, and transfer the same to the *Housatonuc Rail-Road Company*, in payment of said subscription on the books of said *Rail-Road Company*, among which was the bond in question : also, the votes of the board of directors of said *Rail-Road Company*, receiving the same ; which said votes of said *Rail-Road Company*, purported to have been passed at a meeting of the board of directors, on the 20th day of *August*, 1838.

The plaintiff also offered in evidence the following writing, *viz* :

" At a legal meeting of the court of common council of the city of *Bridgeport*, held on the 15th day of *June*, 1838, it was ordered, that the agents of the city, authorized to negotiate a loan or loans for the payment of the subscriptions of the city to the stock of the *Housatonuc Rail-Road Company*, be authorized to give their own bond for the amount of ten thousand dollars, and that said bond be lodged with the clerk of this city."

" I hereby certify that a bond executed by the agents aforesaid, in conformity with the foregoing resolutions, has been lodged with me.        Attest.        *Ira Sherman*, City Clerk."

17. The following instrument in writing, *viz.* :

" Received, *Bridgeport*, *February* 12th, 1839, of *Henry Dutton*, *Lockwood Deforest*, and *F. C. Bassett*, agents of the city of *Bridgeport*, agreeable to a resolution of the board of directors of the *Housatonuc Rail-Road Company*, passed at a meeting of said board, held at said *Bridgeport*, on the 11th day of *September*, 1838, fifty thousand dollars, in bonds issued by said agents, in the name and behalf of the mayor, aldermen, common council, and freemen, of the city of *Bridgeport*,

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

dated *June* 15th, 1838, payable to said company, or their assigns, on the 15th day of *June*, 1848, with interest at six *per cent. per annum*, payable semi-annually ; said bonds being one thousand dollars each, and numbered from 51 to 100 inclusive.   The above sum of fifty thousand dollars, is credited to the city of *Bridgeport* on the books of the *Housatonuc Rail-Road Company*, and is applicable to the stock subscribed by said city to the *Housatonuc Rail-Road Company*, for instalments that are due, or that may hereafter become due.

*Jesse Sterling,*
Treasurer of the *Housatonuc Rail-Road Company*."

18. The charter of the city of *Bridgeport*, granted *May*, 1836.   *Priv. Stat.* 354 to 368.

19. The charter of the *Housatonuc Rail-Road Company*, granted *May*, 1836.   *Priv. Stat.* 1025 to 1030.

To the admission of the evidence here specified, or any part thereof, to prove the issue between the parties, the defendants objected, on the ground, 1. that the city of *Bridgeport* had no authority to pass said votes, either by its charter or the laws of this state ; and that they, and all acts or things done by virtue of them, are void : 2. that the above-mentioned resolutions of the General Assembly are in violation of common right, unconstitutional and void, and conferred no power or authority upon said city : 3. that said votes, resolutions and documents, being all null and void, did not prove, nor tend to prove, the issue between the parties, and should be rejected as evidence in the cause.

The court overruled the objections of the defendants, and admitted the evidence so offered by the plaintiffs, and thereupon rendered judgment in their favour, to recover of the defendants the sum demanded in the declaration, with costs of suit.

To this judgment and the interlocutory decisions made on the trial, the defendants filed their bill of exceptions ; and thereupon they brought a writ of error in the superior court ; which was reserved for the consideration and advice of this court.

*Bissell* and *Huntington,* for the plaintiffs in error, remarked, That it was competent for the original defendants to deny that those, by whom the corporate seal was affixed to the

bond in suit, had lawful authority to do the act, and thus to show that it is not their act and deed. *Stark* v. *Highgate Arch Company.* 5 *Taun.* 792. *Broughton* & al. v. *Manchester and Salford Water Works,* 3 *B. & Ald.* 1. (5 *E. C. L.* 215.) *McLoud* v. *Selby,* 10 *Conn. R.* 390. The bond, upon the face of it, binds not only the corporate property of the city of *Bridgeport,* but also the property of every citizen thereof. It also appears from the instrument, in connexion with the resolutions to which it refers, what was the consideration of the bond, and for what purpose it was given; which was to aid the *Housatonuc Rail-Road Company* in constructing a rail-road from the line of the state of *Massachusetts* to the city of *Bridgeport.* See *Charter, s.* 1. *Priv. Stat.* 1025. They then contended, 1. That the city had no power, under its charter of incorporation, to subscribe for stock in this company, nor to pledge the credit of the city for its payment. The charter discloses the purpose for which it was incorporated, and also its powers. *Priv. Stat.* 354 to 368. The purpose was to enable the city to establish a more perfect government and police, and one better adapted to its situation; and the whole frame of the charter shews, that the powers conferred were such, and such only, as were adapted to this purpose. It is a fundamental principle, that the powers of a corporation are limited by its charter; and it has none others than those that are *expressly conferred,* and such as are *necessarily incidental;* by which last expression is meant, those, and those only, that are indispensable to carry into full effect the powers expressly granted. *Angel & Ames on Corp.* 139. 148. and the cases cited. *Life & Fire Ins. Co.* v. *Mechanics Ins. Co.* 7 *Wend.* 31. *The New-York Firemen Ins. Co.* v. *Sturges,* 2 *Cowen,* 664. *Iidem* v. *Ely* & al. 2 *Cowen,* 678. *Iidem* v. *Eosdem,* 5 *Conn. R.* 560. *Utica Ins. Co.* v. *Scott,* 19 *Johns. R.* 1. *Beatty* v. *Marine Ins. Co.* 2 *Johns. R.* 109. If the power now claimed is conferred on the city of *Bridgeport,* by its charter, it must be found, either in the power to *purchase and hold property,* or in the power to *levy taxes:* and in regard to both, the language of the charter is confessedly very broad. The city is authorized to " purchase, hold, and convey *any estate,* real or personal." But has the city, therefore, the power to purchase *every species* of property, and for *every possible purpose? Cohens* v.

*Fairfield, June, 1843.*

The City of Bridgeport
*v.*
The Housatonuc Rail-Road Company.

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

*Virginia,* 6 *Wheat.* 264.    *Stetson* v. *Kempton,* 13 *Mass. R.* 272.    *Willard* v. *Newburyport,* 13 *Pick.* 227.    7 *Johns. R.* 493. 502. 505.    20 *Johns. R.* 439.

It is, however, said, that a rail-road may be *beneficial* to a city; and therefore, it may aid in its construction. The argument proves too much; and shows, that a corporation may embark in any and every enterprise, which may promise to promote its prosperity. The exercise of the power in question looks beyond the limits of the city, and is not necessary to carry into effect any of the objects contemplated in its charter. Such was evidently the understanding of the city : hence the application to the General Assembly.

2. That the resolve of the General Assembly neither sanctions the acts of the city, nor confers the powers necessary to give validity to the bond. [Here the counsel referred to the resolution in connexion with the various votes of the city upon the subject.]

3. That the confirming resolve is unjust, retrospective, and unconstitutional, and, therefore, void.

In the first place, it is *unjust* in this, that it is an attempt to bind individual corporators, by a contract, to which they never assented, and in relation to a matter in which neither they, nor the corporation, have the slightest corporate interest. It compels these individuals to pledge their credit and their property in aid of a corporation, with which they have no connexion, and in aid of a project in which they have no confidence.

Secondly, the resolve is also *retrospective.* It is not claimed, that every retrospective act is of course void. But whenever such acts have received the sanction of a court of justice, it has been on the principle that they subserve the great purposes of public justice. If manifestly unjust, or in violation of the social compact, they are invalid. *Goshen* v. *Stonington,* 4 *Conn. R.* 222, 3, 4, 5, 6.    *Calder* & ux. v. *Bull* & al. 3 *Dal.* 386.    *Beach* v. *Walker,* 6 *Conn. R.* 697. 698. *Mather* v. *Chapman,* 6 *Conn. R.* 58.    *Berlin* v. *New-Britain,* 9 *Conn. R.* 181.    16 *Mass. R.* 245.    The resolve empowers the majority to tax the minority to pay for a mere experiment. It becomes a question of taxation, and involves the principle, that the minority may be taxed for any purpose, however foreign to the objects of their incorporation. It is utterly opposed to our whole system of legislation on the

subject of taxation. It is as dangerous as it is novel ; and is calculated to encourage a spirit of reckless speculation. If this may be done in the case of a city, it may also be done in regard to all our *quasi* corporations.

*Fairfield, June, 1843.*

The City of Bridgeport *v.* The Housaton- uc Rail-Road Company.

Thirdly, the act in question is *unconstitutional. Const. Conn. art.* 1. *s.* 11. It virtually authorizes the taking of property, either for public or private use, without compensation. And whether the taking be for the one purpose or the other, it is in direct violation of the constitution, and also of the great principle of common right. Is here, then, a taking of property ? It is admitted, that an execution on one of these bonds may be levied on the individual property of any corporator. The form in which this is done, cannot be very material.

*Hawley* and *Dutton*, contra, contended, 1. That the city had, by its charter, power to subscribe. *Priv. Stat.* 355. *s.* 5.

2. That if otherwise, the act of the legislature confirmed the subscription, and legalized the bonds. In the first place, a void act may be confirmed by the legislature. *Wilkinson* v. *Leland* & al. 2 *Peters*, 627. 662. *Com. Dig. tit.* Confirmation, D. Secondly, in this case, the city also ratified the act of the legislature.

3. That the act was not unconstitutional.

In the first place, legislative power is given to the General Assembly, by the constitution, without any express limitation. *Const. Conn. art.* 3. *s.* 1. It, of course, possesses all the power that any legislature can have, under a free government.

Secondly, the General Assembly possesses original, unlimited legislative power, except so far as it is restrained by the constitution.

Thirdly, the construction of ways is peculiarly the province of the legislature, and has always been so considered.

Fourthly, if the legislature has general jurisdiction over the construction of ways, it has a right to exercise a discretion as to the mode of accomplishing the object.

Fifthly, the legislature might have constructed the whole road, and assessed 150,000 dollars on the city of *Bridgeport. A fortiori* it could authorise the city to subscribe for stock.

Sixthly, it is the peculiar duty of the legislature to protect the interests of each portion of the state. If it should consid-

*Fairfield,*
*June, 1843.*

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

er the construction of a rail-road necessary for this purpose, it would have the right to direct it to be built, as well as to construct light-houses, beacons, &c.

Seventhly, if the legislature has a right to legislate at all on the subject—in other words, if it has jurisdiction—its acts will be valid, however unwise or inexpedient they may be.

Eighthly, this act was *apparently* necessary and proper to protect the interest of the city of *Bridgeport.* It was also *really* so.

Ninthly, the objection that this was taking the property of individuals, for public purposes, without compensation, is without foundation. The same objection could be made in the case of appropriations for colleges, schools, highways, &c. The city also received the same consideration that individual subscribers received.

Tenthly, the suggestion that the act compels men to subscribe against their will, is equally groundless. So far as the proceeding is *in invitum,* it is merely compelling the citizens to contribute their proportion to a public object.

Eleventhly, the city was a corporation suitable and proper to exercise the agency conferred upon it, by the legislature, to carry its own purposes into effect.

Twelfthly, the assent of all persons interested is to be presumed from their remaining quiet for four years, without attempting to get the law repealed. To allow them, in this way, to secure all the advantages of the law, and then repudiate it, would be doing great injustice to the community.

In support of the foregoing positions, the following authorities were cited. *Stark* v. *McGowen,* 1 *Nott & McCord,* 387. *Thomas* v. *Leland & al.* 24 *Wend.* 65. *McMasters* v. *The Commonwealth,* 3 *Watts,* 292. *Livingston* v. *Mayor &c. of New-York,* 8 *Wend.* 85. 101. *The People* v. *Morris,* 13 *Wend.* 325. *Bloodgood* v. *Mohawk and Hudson Rail-Road Company,* 18 *Wend.* 9. 30. *The People* ex rel. *Lynch* v. *Mayor &c. of New-York,* 25 *Wend.* 680. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 518. *Wilkinson* v. *Leland,* 2 *Peters* 627. 662. 26 *Wend.* 54. 8 *B. & Cres.* 477.

CHURCH, J. The unusual practical importance of some of the questions involved in this case, and the zeal and ability with which they have been discussed, have demanded and

received from us an investigation as deliberate and mature as the performance of our other duties have enabled us to give. And the result has been, a clear opinion, that the documents offered by the original plaintiffs in the county court, were by that court properly admitted in evidence, as material upon the issue joined in the case.

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail Road
Company.

The action is brought to recover the interest upon a bond executed by the city of *Bridgeport*, with all the legal formalities and solemnities necessary to give validity to such an instrument. The agents of the city were duly appointed and empowered, and their signatures, with the seal of the corporation, have been affixed to the bond. The defendants have pleaded the general issue of *non est factum*, to the action; under which plea, unembarrassed, as we think, by any matter of estoppel, they have a right to contest and deny the power of the city to execute the bond and the *coupon* or certificate in suit.

Whether it was incumbent upon the plaintiffs, after having proved the authority of the agent, and the execution of the bond, then to prove the right and power of the city to make the contract under consideration, we need not enquire; it was certainly competent for them, in this preliminary stage of the investigation, to make this proof; and the evidence objected to materially and directly conduced to prove this important part of the issue.

There have been some questions discussed by counsel, which we have not supposed necessarily involved in the case; and some others, naturally enough suggesting themselves to us in the course of the investigation, which are not presented by this record: such as, whether the original charter of the city of *Bridgeport* gave authority, of itself, to the city, to execute this bond; and in what manner a judgment and execution in favour of the plaintiffs may be enforced and collected.

The essential questions arising here, we think, grow out of the resolution of the General Assembly of *May*, 1838.

The most material facts necessary to a proper apprehension of the case, and appearing upon the bill of exceptions, are, that as early as *March* 2, 1837, the city of *Bridgeport*, at a legal meeting, voted, that it *was expedient* to aid in the construction of *The Housatonuc Rail-Road*, by subscribing

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

100,000 dollars to its capital stock, and at the same time, appointed an agent to make subscription. Agents were also appointed to procure funds necessary to pay the sum subscribed, by procuring loans of money, at interest not exceeding 6 *per cent. per annum,* with power to pledge the credit of the city therefor, by issuing certificates, or by promissory notes, or by securities in any other form. The agents of the city accordingly did subscribe the sum required on the books of the *Rail-Road Company;* and this act was ratified and confirmed, by the city, at a legal meeting, on the 25th day of *March,* 1837. At this meeting, a further subscription of 50,000 dollars was authorized, and the agents directed, as before, to negotiate the funds required to meet it. Until this time, the city had probably believed, that their act of incorporation conferred sufficient powers to warrant its action in this matter. But either doubting it now, or from other precautionary motives, it, at this meeting, voted, that a petition should be presented to the legislature for the passage of an act necessary to give full force and validity to its former proceedings on this subject, and that such further powers might be conferred upon the city as should be necessary and proper to carry said proceedings into effect. The General Assembly accordingly, in *May,* 1838, granted the petition, and *ratified, confirmed, established and made obligatory on said city,* and the citizens thereof, all their former proceedings, in the same manner, and to the same extent, as if all the necessary powers for that purpose had been conferred by the charter of the city; and also granted to the city full power and authority, at any legal meeting, specially warned for that purpose, to adopt such other measures, as, in the opinion of such meeting, might be necessary to carry into effect, in a manner most conducive to the interests of the city, all the former proceedings, and to provide for the payment of the subscriptions, and the issuing and negotiation of said loans, notes, certificates, or scrip, or such other securities, as the city should authorize, order, or direct. This legislative act or resolve was afterwards duly accepted and approved, by the freemen of the city, in conformity with the proviso of the resolution.

This city is a municipal corporation, an artificial body, capable of being invested with, and of exercising, powers of great extent; and if the powers conferred upon it, by the

resolution of 1838, had been created by its original act of in- corporation, we could not have doubted their efficacy, nor the legal obligations incurred by a proper exercise of them. And we have not been able, after a full consideration of the aforesaid resolution, produced, as it was, by the considerate application of the city itself, and adopted and ratified, as it has been, by the freemen of the city, at a meeting called especially for its consideration, to distinguish between the validity of acts done under its sanction, and acts which might have been performed, by virtue of the same authority contained in an original charter.

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

Under the authority derived from this resolution, the bond in dispute has been executed with all the legal formalities, ordinarily sufficient to charge either one individual, or a corporation, with the obligation of its payment. Wherefore, then, should not the city of *Bridgeport* be adjudged liable to pay ?

Several reasons in opposition have been, with great force, urged upon us.

1. It is claimed, that aside from what is hereafter suggested as a constitutional infirmity of the resolution of 1838, it is necessarily inoperative as a confirmatory act, because, if the proceedings of the city and its agents previous to that resolve, were void, as the defendants suppose, from want of authority in the city to act, they could never be rendered effectual for any purpose, by any act of legislation ; and we have been referred, in support of this position, to the principles of the common law applicable to deeds of confirmation *inter partes*. Although individuals may not have power to make good *ab initio*, that which was originally void, by subsequent deeds or acts of confirmation ; yet this cannot be true of acts of sovereignty—acts of legislation not conflicting with constitutional right. And in giving a construction to such an act, the only question can be, what was the intention of the legislature ? When this is ascertained, our duty is imperative to give to that intention its legal effect. In the present case, there exists no doubt on this point. The declared purpose of the city in asking legislative interference, was, to give validity to its previous votes, not to perpetuate their infirmity, if such infirmity there was. To comply with the request of the city, was the object of the legislature in passing the resolve—not

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

to defeat and disappoint it. The end of all confirmatory laws, so far as they are intended to be retroäctive, is to set up and give original effect to acts before void or inoperative. Such was the object and such the effect of our statute of 1820, confirming *void marriages,* as declared by this court, in the case of *Goshen* v. *Stonington,* 4 *Conn. R.* 209. And such, also, for many years, has been annually true of the resolves of the General Assembly confirming the void acts of the assessors and boards of relief in making out the tax lists of the towns: and that this is the proper effect of such laws, was expressly adjudged, by the supreme court of the *United States,* in the case of *Wilkinson* v. *Leland,* 2 *Peters,* 662.

2. Again, it is said, that the resolution under consideration is retroäctive, and opposed to the fundamental principles of legislation, and conflicts with natural justice ; and furthermore, that it is directly unconstitutional, and, for these reasons, void. The history of legislation and jurisprudence in this country of constitutions, both state and national, has spoken too frequently and too explicitly upon the character of retroäctive laws, from the time of the decision of the case of *Calder* v. *Bull,* 3 *Dallas,* 386., to be disregarded at this day. Retrospective laws, whether they be public or private, not relating to crimes and punishments, but merely civil in their operation, are not void because they are retroäctive. Void they may be, to be sure ; and so may be, and so frequently are, laws of a prospective character. We concede, that retroäctive laws generally have many features of injustice, although intended to effect much good ; but as the judiciary is not the guardian of the legislature, but is the weaker department of the government, possessing no *veto* power over acts of constitutional legislation, more properly belonging to the executive ; we cannot disregard a legislative enactment, because it is retroäctive in its purpose and effect, whatever may be our opinion of the general policy of such laws. It belongs to us rather to settle questions of constitutional power, than questions of policy. *Walker* v. *Bacon,* 8 *Mass. R.* 468. *Lock* v. *Dane,* 9 *Mass. R.* 360. *Foster* v. *Essex Bank,* 16 *Mass. R.* 245. *Goshen* v. *Stonington,* 4 *Conn. R.* 209. *Waterbury* v. *Clark,* 4 *Day,* 198. *Mather* v. *Chapman,* 6 *Conn. R.* 54. *Beach* v. *Walker, Id.* 190. *Booth* v. *Booth,* 7 *Conn. R.* 350. *Dash* v. *VanKleeck,* 7 *Johns. R.* 506.

It certainly has been more than intimated—it has been declared—by judges and courts of the highest respectability and authority in this country, that retroactive and other statute provisions, which unjustly take away or impair vested rights, or impose new duties in respect to past transactions, without just compensation, are to be treated in this respect as inoperative, either by a very liberal construction of the laws themselves, or as being essentially opposed to the spirit of the constitution, and the fancied social compact, although not within the letter of any constitutional prohibition.  On the contrary, the names of distinguished jurists are not wanting, who deny to the judiciary any right to treat such laws as void.  *Vide* authorities above cited ; also, *Satterlee* v. *Matthewson*, 2 *Peters*, 280.  *Osborne* v. *Huger*, 1 *Bay*, 179.  *Fletcher* v. *Peck*, 6 *Cranch*, 135.  *King* v. *Dedham Bank*, 15 *Mass. R.* 447.   *Wales* v. *Stetson*, 2 *Mass. R.* 143.   *Society for the propagation of the Gospel* v. *Wheeler*, 2 *Gallis.* 105.   *Cochran* v. *Van Surlay*, 20 *Wend.* 365.   Senator *Verplank's* opinion.   *Butler* v. *Palmer*, 1 *Hill*, 324.   *Charles River Bridge* v. *Warren Bridge*, 11 *Peters*, 420.   *American Jurist* for *October*, 1833, *p.* 297.  [*Allen* v. *McKeen*, 10 *Amer. Jurist*, 273 to 297.]   Judge *Iredell's* opinion in *Calder* v. *Bull*, 3 *Dal.* 398.   *Varick* v. *Smith*, 5 *Paige, Ch. R.* 137.

It has been intimated from respectable sources, that the test of the validity of retroactive laws, is, whether they be unjust in their operation, and if they are, that they should thus far, at least, be disregarded.  If such laws clearly abrogate vested rights, if they take the estate of one man and transfer it to another, &c., without reasonable cause, and are, therefore, palpably unjust ; we should probably so consider them, if possible, as to avoid these effects, or in accordance with the expressed opinion of our own courts, consider them in this respect inoperative ; not, perhaps, because we might believe them in the abstract to be unjust, but rather because they stand opposed to the true spirit of the constitution ; and, therefore, are unconstitutional and void.

There may not often be any great difficulty in determining what are the principles of natural justice, nor what would tend to undermine that which theorists may suppose to be the fundamental principles of the social compact, especially by those who acknowledge the precepts and obligations of

*Fairfield,*
*June,* 1843.

The City of Bridgeport
*v.*
The Housatonuc Rail-Road Company.

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

revealed religion ; yet these principles are not always of easy and undoubted application to the infinitely varied forms of human action. And we know of no other municipal power, which can more safely make such application, than the legislature ; and as a court, although we might dissent from its conclusions, yet we disclaim any right to disregard them, for no other reason than that we might consider them unreasonable, impolitic, or unjust. *Goshen* v. *Stonington,* 4 *Conn. R.* 209. 1 *Bl. Com.* 91. *Christian's* notes.

In the present case, however, all these considerations are rather hypothetical than relevant to the essential bearing of the facts disclosed by this bill of exceptions ; for we do not perceive any thing, either in the votes and proceedings of the city of *Bridgeport,* or of its agents, or in the resolution of the General Assembly, so far as it is necessary to consider it, in this case, so unusual, so dangerous or unjust, as to require of us such an extreme exercise of judicial power, as for such causes, to declare them void. We know, that much of the commercial prosperity of our cities and other business communities, depends upon the extent and facilities of their intercourse with the interior country, as well as with distant and foreign places. To promote this intercourse, by constructing and improving roads, canals, bridges, harbours, wharves, &c., has been a very frequent object of the enterprise of the inhabitants of such communities ; and *American* cities, in their corporate capacities, have frequently given aid to such improvements, without exciting alarm, or of being suspected of thus oppressing their citizens, or of invading unjustly any salutary principle of the social system. In the present instance, the city of *Bridgeport,* acquainted, as we presume, with its own wants and resources, and what would best promote its prosperity, upon full and frequent deliberation, both before and after the resolution of 1838, decided, that the construction of the *Housatonuc Rail-Road* and its termination within the limits of the city " would result in great advantages to the city ;" and it was, therefore, desirous of aiding in its construction. The General Assembly of the state coincided in this opinion of the citizens of *Bridgeport ;* and there is nothing apparent upon this record or elsewhere, which has convinced us, that either the city or the legislature was mistaken in the matter. It should be borne in mind, that it was neither the

declared nor the actual purpose of the city to deal or specu- *Fairfield,* late in the stock of the *Rail-Road Company,* but solely to June, 1843. aid in the construction of what was believed to be a great The City of Bridgeport public improvement, which would result in direct advantage *v.* to the city, by directing the business of the interior from other The Housaton-uc Rail-Road channels, and securing it to *Bridgeport.* A subscription to Company. the stock was a means, and the only practicable means, of furnishing the intended aid, and effecting the primary objects. To subscribe, for this purpose, to the stock of the *Rail-Road Company,* was not an unusual transaction, but rather, according to the language of the day, a fair business operation. If, therefore, the city became directly a stockholder in a corporation, and its citizens indirectly interested in a rail-road, this was only an incidental result of their efforts to give aid to the construction of the road for the interest of the city and its citizens. The state itself is a stockholder in several banks ; and so are many of our corporations, both civil, charitable, and ecclesiactical. In all this we see nothing to alarm.

But it was said in argument, and herein rested a strong ground of the defendants' claim, that this resolve was unjust, and opposed to the fundamental principles of the social compact, and an infringement of the vested rights of the citizens of *Bridgeport,* because it authorized a majority of the citizens to compel a minority to contribute to objects which they disapproved and opposed, and to tax them against their will for objects foreign to the original purposes of the city charter. We have no official knowledge of the existence of a minority upon any subject now in controversy, appearing either as remonstrants before the legislature, or acting in any corporate meetings of the city. But if we had, we cannot regard their complaints, under the present form of proceeding. And here we take occasion once more to remark, that our present business is, to determine whether the bond in suit is obligatory upon the corporation, and not whether the individual estate of the citizens may be taken to satisfy a judgment against the corporation, either by the common law of the state, or by force of the resolution we are considering.

The objection we are discussing, we think not only too broad, but too late. It would lie with equal reason against every act of the legislature creating a public municipal cor-

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

poration in opposition to the will of any who could be made subject to its action. It is a fundamental principle of all our popular institutions, both sovereign and corporate, that majorities must govern, and minorities must submit, in every case where the body does not transcend its constitutional or chartered powers. The practical effects of this principle, it is confessed, is often not only injurious to the majorities themselves, but unjust to others ; but this consequence is only the lesser evil, and the price paid for the greater good. If minorities exist, the acts of majorities are of necessity opposed to what such minorities may believe to be their interests and their rights. The levying and collecting of taxes, is always a compulsory act of the majority, and generally very ungraciously submitted to, by the minority. The present case is not unlike most others in this respect.

Such of the citizens of *Bridgeport,* as were opposed to the projects of the city, and believed they were inconsistent with legitimate city powers, and subversive of the rights of the minority, have had frequent opportunities of being heard, as well by the legislature as the courts. Minorities are not so merged and absorbed in the corporate body, as to have no rights, and be entitled to no protection.

But if there has been injustice, either in the proceedings of the legislature or the city, by holding such proceedings void, we should only transfer the bearing of the injustice, from the citizens of *Bridgeport,* who would gladly have availed themselves of the expected favourable result, to third persons, who have confided in the good faith of such citizens. Whether the resolution of the legislature was void, depends upon its real character, and its necessary tendency and effect, and not upon the result of an experiment.

Most of the reasoning of the defendants, in this part of the case, as we have seen, is grounded upon the assumption, that this resolution is altogether retrospective, and that it should be subjected to the common odium attached to retroactive laws. This is a mistaken construction. It is prospective also ; and sufficiently so to legalize these bonds. It is an *enabling* act, and authorizes the city " to adopt such other measures as should be thought necessary to carry into effect the former proceedings of the city, and to provide for the payment of subscriptions, &c., by issuing scrip or other secu-

rities, as said city should authorize, order or direct." Under <span style="font-style:italic">Fairfield,</span> <span style="font-style:italic">June, 1843.</span> this power, the corporation again acted, and, in effect, as if de novo, enacted every thing which had before been done, and consummated every thing necessary to be done " to secure the object contemplated by said subscription." If such power had been conferred, by the original charter, and such had been the action of the city under it, as we have before remarked, no one would have doubted its legality.

We have been referred to no express constitutional provision, with which the resolution under consideration is supposed to conflict, except it be *art.* 1. *s.* 11. of the constitution of this state. " The property of no person shall be taken for public use, without just compensation therefor." This resolution, in conferring power upon the city of *Bridgeport* to make subscription to the stock of the *Rail-Road Company*, and to issue its bonds or other scrip, and borrow money, &c., confers no power of taking private property for public use not found in the original charter. The power of taxation, which is the only one savouring of this interest, is to be found there, not here. The authority of city legislation is, to be sure, extended to new subjects ; and therefore, taxes may be increased, as the objects of taxation are multiplied, and in this way, indirectly, private property is demanded for public use ; but this does not fall within this prohibition of the constitution : if it did, then all charters of incorporation conferring a power of taxation, would be unconstitutional. At any rate, so far as the taxing power is given, if this is embraced in the foregoing constitutional provision, it is not a forced construction of it, to say, that the compensation secured by the constitution is provided, by the overbalancing advantages and benefits, which both the citizens of *Bridgeport* and the legislature supposed would be conferred, by the construction of the rail-road.

3. It remains only to consider whether the authority given by the legislature, by the resolution of 1838, has been pursued, and whether the powers conferred upon the corporation, have been executed by the city and its agents ? And in doing this, we admit, that in this country, all corporations, whether public or private, derive their powers from legislative grant, and can do no act for which authority is not expressly given, or may not be reasonably inferred. But if we were to say, that

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

they can do nothing for which a warrant could not be found in the language of their charters, we should deny to them, in some cases, the power of self-preservation, as well as many of the means necessary to effect the essential objects of their incorporation. And therefore, it has long been an established principle in the law of corporations, that they may exercise all the powers within the fair intent and purpose of their creation, which are reasonably proper to give effect to powers expressly granted. In doing this, they must have a choice of means adapted to ends, and are not to be confined to any one mode of operation.

The city of *Bridgeport*, by its votes, directed loans to be effected, as a means of paying its subscriptions. This the legislature authorized and approved. And now it is claimed, that, by virtue of this authority, the city was not empowered to issue its bonds to the *Rail-Road Company*, instead of money procured by such loans. If the same object was accomplished, by issuing the bonds, as would have been, by borrowing and paying the money, it would be very much like trifling with the law to hold that the legal consequences are essentially different. The *Rail-Road Corporation* thus became the creditor of the city, instead of some other persons, and received the bonds as cash, in payment of subscriptions. There can hardly be said, in this respect, to have been a departure from the literal terms of the city votes; and if there had been, the present objection, coming from the city itself, after it had received the full, contemplated consideration for its bonds, and after having carried its entire purpose into effect, by this mode of operation, ought not to receive our countenance or favour. *Bank of Northern Liberties* v. *Cresson*, 12 *Serg. & Rawle* 306. *Buckley* v. *The Derby Fishing Company*, 2 *Conn. R.* 254. *Witté* v. *The Same, Id.* 260.

4. Very nearly of the same nature were other objections to the acts of the city agents; such as that the subscriptions were paid in advance,—and that the interest upon the bonds was made payable semi-annually.

It was one of the regulations of the *Rail-Road Company*, that the subscriptions to its stock should be paid by instalments; but this was intended as a privilege to stockholders, which they might waive, if they pleased. The city acted in furtherance of its supposed interests in issuing its bonds in

*Fairfield,*
June, 1843.

The City of
Bridgeport
*v.*
The Housaton-
uc Rail-Road
Company.

full of its subscription in advance. And this act, when connected with the object of the *Rail-Road Company* to pay to the city semi-annual interest upon the amount of subscriptions, not payable by the general terms of the subscription, could result in no loss to the city, if such obligation should be fulfilled.

It is true, the city agents were only authorized to negotiate loans at an interest not exceeding six *per cent. per annum.* They did not go beyond this power, by issuing bonds at that rate of interest, payable semi-annually. The rate *per cent.* was prescribed by the vote, but the period for its payment was left to the discretion of the agents. They exercised this discretion prudently, and only conformed to the usual course of business of this character. It is notorious, that all stocks, as well those of the *United States,* the individual states and the stocks of municipal and private corporations, are created and issued upon the same terms; and none others could find favour in the market.

Upon a careful review of the proceedings of the city of *Bridgeport,* and the conduct of its agents, we cannot doubt but every thing has been done in reasonable, if not in literal, conformity with the powers conferred by the legislature; and especially, that the bond in question, approved, as it has been, not in substance alone, but in form also, by the freemen of the city, in a deliberate meeting, carried out the entire purpose, as well of the corporation as of the legislature, and is of full and perfect obligation upon the city.

Such are the most prominent reasons for the opinion we have expressed in this case, and such as have convinced us, that there is nothing erroneous in the judgment of the county court; and we shall, therefore, advise that it be affirmed.

In this opinion the other Judges concurred.

*Judgment affirmed.*