## Case No. 9,998.

### MYGATT v. GREEN BAY.

[1 Biss. 292;[1] 8 Am. Law Reg. 271.]

District Court, D. Wisconsin. Sept., 1859.

MUNICIPAL CORPORATIONS — BONDS — RIGHTS OF HOLDER—PAYABLE IN DISTANT PLACE—ACT AUTHORIZING ISSUE—NOTICE.

1. The holder of a city bond issued to a plank road company or bearer in aid of the construction of the road, pursuant to a legislative act, is not bound to examine the records of the city to ascertain whether the resolution of the council for issuing the bonds corresponds with the resolution recited in the bonds. The recital in the bond binds the city in an action by a bona fide holder.

[Cited in Milner v. Pensacola, Case No. 9,-619.]

2. Where city bonds are issued to a corporation or road company payable in the city of New York, without express authority of law to make them so payable, the bonds are not void for this reason, but the city is not bound to transport funds to New York for their payment.

3. The act under which the bonds are issued is the basis of the contract, and dealers in such bonds should take notice of the act, it being a public statute.

An act of the state legislature to amend the charter of the town of Green Bay, and to enable the corporation to aid in the construction of roads, approved March 7th, 1853 [Laws 1853, p. 138], provided, that the corporation of said town shall be hereafter known and styled the "President and Trustees of the Borough of Green Bay." Section 2 of said acts is: "That the president and trustees of said borough shall have authority to subscribe in behalf of said borough, to the capital stock of any rail or plank road, which is now, or may thereafter be incorporated for the purpose of constructing roads passing through, or terminating in said town, on the Fox river opposite said borough, to the amount of one hundred thousand dollars." And by section 3: "In order to provide for the payment of the installments on the stock subscribed as aforesaid, the said president and trustees may borrow, on the faith of said borough, any sum or sums of money not exceeding in the aggregate the whole amount of the installments to become due on such stock, at a rate of interest not exceeding eight per cent. per annum, and for a term not exceeding twenty years. And in order to provide for the payment of the installments becoming due on

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

such stock, in case the same shall not have been provided for by law, or otherwise, and also in order to provide for the payment of the interest and principal of any loan made in pursuance of this act, the said president and trustees shall levy annually a tax on the real estate within the corporate limits of said borough not exceeding one per cent. on the assessed value of said property: provided, that if in any year the exigency of the case may require it, such tax may be increased to any rate not exceeding two per cent. on such assessed value." By an act to incorporate the Taychudah and Green Bay Plank Road Company, approved April 16th, 1852 (Laws 1852, p. 551), that company was incorporated; and the city of Green Bay was incorporated by an act approved February 27th, 1854 (Laws 1854, p. 100). By this act the city was made liable for the debts of the borough. This suit is on bonds of the borough of Green Bay, for the recovery of the interest accrued, according to their condition, and coupons annexed. The bonds recite the authority given the president and trustees, by the act of March 7th, 1853, to subscribe to stock. And also: "Whereas, the president and trustees of said borough at a meeting of their board, did agree by resolutions of said board to subscribe the sum of twenty thousand dollars to the stock of the Taychudah and Green Bay Plank Road Company, and that the said borough issued bonds to the amount of said subscription, to the said plank road company, and that said bonds be signed by the president and countersigned by the clerk, under the seal of the corporation. Now, therefore, for the purpose of carrying out the provisions of the said act of the legislature, and in accordance with the resolutions of the said board, as aforesaid, the borough of Green Bay is held and firmly bound unto the Taychudah and Green Bay Plank Road Company, or bearer, in two thousand dollars, upon the condition that the said borough of Green Bay shall pay or cause to be paid to the said Taychudah and Green Bay Plank Road Company, or their successors or assigns, or to the bearer hereof, the just and full sum of one thousand dollars in ten years from the first day of January, 1854, with interest annually at the rate of eight per cent. per annum until paid, said principal and interest to be paid at the Bank of New York, in the city of New York." The coupons annexed are for eighty dollars each. The annual interest is payable at the Bank of New York. The bonds are signed by the president of the borough and countersigned by the clerk under the corporate seal. The coupons are signed by the president. The following resolution of the board on the 19th of November, 1853, was read on the part of the defendant: "That the board of trustees of the borough of Green Bay, hereby authorize their committee on subscriptions to subscribe the sum of twenty thousand dollars to the capital stock of the Green Bay and Taychudah Plank Road Company, payable in bonds

of the borough at seven per cent. per annum, under the act authorizing the said borough of Green Bay to subscribe to plank roads and railroads." One terminus of the road was at Green Bay. The defendant's counsel offered to prove, that the contractor received seventeen of these bonds, and that he had only made three miles of road, at a distance of sixteen miles from Green Bay, which offer was overruled as immaterial. A verdict was taken pro forma for the amount of coupons due before suit brought, not adding exchange. on New York. The defendant's counsel moved for a new trial.

Peckham & Bloodgood, for plaintiff.
Howe & Beckwith, for defendant.

MILLER, District Judge. The two questions worthy of consideration, raised on this' motion are: 1st. That the resolution of the board did not authorize the issuing of the bonds at a rate of interest higher than seven per cent. 2d. That the act did not authorize bonds to be issued payable in the city of New York.

The resolution of the board of trustees, as recited in the bonds, does not correspond with the resolution of record, excepting in this, that twenty thousand dollars of stock in the company is authorized to be subscribed for, and that bonds be issued for the amount. The rate of interest recited in the bonds is not as prescribed by the resolution. The recital refers to a resolution directing how the bonds shall be executed. The clerk testified that there was no other resolution of the board on record but the one. It may be, there was another resolution which was not recorded. At all events it is immaterial in this suit of the holders of the bonds, whether there was such a resolution or not. The city cannot take advantage, in this suit, of the omission or neglect of the clerk. The recital in the bonds binds the borough the same as if a previous resolution had been passed by the president and trustees, and duly recorded. The city is now estopped from denying the existence of a resolution authorizing the president and clerk to execute bonds in the form of these bonds at an interest of eight per cent. The purchaser was not bound to look for the resolution. Commissioners of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539; Royal British Bank v. Turquand, 6 Ell. & Bl. 327. The bonds are the acts of the trustees directly and not through agents.

The weight of authority sustains the principle, that when an obligation is payable at a particular place, and is necessarily sued at a place where the exchange is in favor of the place of payment, the party is entitled to recover the real difference of exchange. Story, Confl. Law, §§ 308–313, and cases cited; Story, Bills, §§ 150–152, and cases cited; Sedg. Dam. 240, and cases cited; Smith v. Shaw [Case No. 13,107]; Lanusse v. Barker,

3 Wheat. [16 U. S.] 101; Woodhull v. Wagner [Case No. 17,975]; Lee v. Wilcocks, 5 Serg. & R. 48; Grant v. Healey [Case No. 5,696]. In Wood.v. Kelso, 27 P. St. 241, a suit on a note dated in Erie, Pennsylvania, payable in New York, the exchange was allowed.

The decisions against the allowance of exchange are Martin v. Franklin, 4 Johns. 125, which was an action of assumpsit for goods sold and delivered, and insimul computassent, Schofield v. Day, 20 Johns. 102. It will be observed, that the courts in each of those cases contented themselves with a per curiam opinion without any examination of authorities or precedents, and also Adams v. Cordis, 8 Pick. 260. These bonds would on their faces entitle the holders to the· exchange between Green Bay and New York, in addition to the debt and interest.

The legislative act authorized the president and trustees of the borough of Green Bay, to borrow on the faith of said borough, at a rate of interest not exceeding eight per cent. per annum. The condition of the bonds is for the payment of the principal and interest at the rate of eight per cent. at the Bank of New York, in the city of New York. The act did not expressly authorize the issuing of bonds, but it is reasonable to suppose it was contemplated that some security or evidence of debt should be given by the president and trustees for the money borrowed. The bonds were given to the company for stock subscribed, and according to the modern system of financiering, they were put into negotiable shape, so that money could be raised on them for the prosecution of the work. By the law the principal and interest on these .bonds are to be paid out of taxes assessed upon the real estate of the inhabitants of Green Bay.

In the case of the Commissioners of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539, the act authorized bonds to be issued, redeemable at such time and place as the directors of the company may determine. The bonds were made payable in the city of New York, to the Ohio and Mississippi Railroad Company, or bearer, for stock in said company. There was express lawful authority for issuing these bonds.

These bonds, on their face, import a compliance with the law under which they were issued. "The act under which the bonds were issued is a public statute of the state, and the person dealing in them is chargeable with a knowledge of it, and as the board was acting under delegated authority, he must show that the authority has been properly conferred." In reading the act, under which the bonds in suit purport to be issued, he will not find express authority to issue bonds, nor any authority, express or implied, to issue them payable in the city of New York, where the exchange is uniformly against Green Bay. The purchaser of these bonds might properly consider them nothing more than a certificate

under the corporate seal of the borough, signed by the president, and countersigned by the clerk. They are in substance nothing more.

The borough of Green Bay, instead of borrowing money to pay installments on the stock, issued bonds direct to the plank road company. The company thus became the creditor of the borough, instead of some person from whom the money might have been borrowed, and it received the bonds as cash in payment of the subscription. It was attempted to be proved, at the trial, that the borough never received the certificates of stock, but proof was not to be received to affect the bonds in the hands of these plaintiffs, for the neglect of the corporation in not obtaining the certificates, could not be a reason for not paying the bonds. The city is entitled to the certificates of stock for which the bonds were given, and can recover them, or damages for their amount on demand.

Giving the bonds to the plank road company cannot be now made an objection on the part of the city, even if it were not according to the literal terms of the act. The borough preferred this mode of carrying out the provisions of the act, and either received an equivalent, or a supposed equivalent for the bonds, or is entitled so to receive it on demand. Under the act it could have borrowed the money, and paid the subscription in installments, or paid the whole amount in advance, or given its bonds for the whole amount. Either proceeding would be a substantial compliance with the act. And having preferred the latter mode, a defense to the payment of the bonds and interest, based upon technical grounds, is not to be favored. In the case of City of Bridgeport v. Housatonuc R. Co., 15 Conn. 475, the bonds were made payable in the city of New York, without express authority of law. That was not made a point of defense. The defense was, that the interest on the bonds was payable semi-annually when it was directed to be paid annually. The court held it was not such a material violation of the authority for issuing the bonds, as to invalidate them, particularly as the freemen of the city afterwards approved them. The rate of exchange between New York and Bridgeport was probably so nearly balanced, and the expenses of transporting the money to New York, so trifling—that this objection was probably not thought worthy of consideration.

A note payable generally is a different instrument from one given by the same parties for the same amount, payable at New York. The rate of interest, the exchange, and the place of demand are controlled by the place where it is payable. Nor will a note payable at a particular place be received on a declaration, in which the place of payment is omitted. Sebree v. Dorr, 9 Wheat. [22 U. S.] 558; Covington v. Comstock, 14 Pet. [39 U. S.] 43. In this case the rate of interest is prescribed in the bond. And no demand is

necessary. But the rate of exchange between Green Bay and New York, or the expense of transporting funds from Green Bay to New York, is so considerable in amount as greatly to enhance the amount of debt. It is evident that the act did not authorize the loans or debts to be contracted on this condition. But shall the bonds be adjudged void for this reason? It was the duty of the plaintiffs to examine the act, and there they would not see any authority for contracting the loan or debt on this condition.

After much reflection upon the subject, I have come to the conclusion, that the interest on the bonds is recoverable, but not with exchange on New York, as the act did not authorize the loan or debt to be contracted on that condition. The act controls the extent of the obligation. That part of the condition of the bonds is not binding on the city, as a part of the contract under the act, and the property in the city should not be taxed for its payment. The holder of such bonds and coupons cannot require the city of Green Bay to pay in the city of New York. I think the bonds are a lawful debt of the city, with annual interest at the rate of eight per cent. The motion for a new trial will be overruled.

NOTE. The holder of coupon bonds payable to bearer but referring to act under which they were issued, is chargeable with knowledge of its provisions, and the construction to be placed upon them by the courts. Com. v. State, 32 Md. 501. County bonds payable absolutely to bearer are good in hands of bona fide holder, although restrictions in statute have been disregarded. Wood v. Alleghany Co. [Case No. 17,939]; City of San Antonio v. Lane, 32 Tex. 405. Bona fide purchaser without notice of a suit pending to cancel the bonds, not prejudiced. Durant v. Iowa Co. [Case No. 4,189].

Want of power to issue bonds is a good defense, even against a bona fide holder. Treadwell v. County Com'rs, 11 Ohio St. 183; Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 83; Starin v. Town of Genoa, 23 N. Y. 439; Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676; Aspinwall v. Commissioners of Daviess Co., 22 How. [63 U. S.] 364; Gould v. Town of Sterling, 23 N. Y. 456; Hill v. Manchester & S. Water Works Co., 5 Barn. & Adol. 866; City of Aurora v. West, 22 Ind. 88; Marshal Co. v. Cook, 38 Ill. 44; Clay v. County Court, 4 Bush. 154.

Mere irregularities, however, do not vitiate them. Thompson v. Lee Co., 3 Wall. [70 U. S.] 327; Gelpcke v. City of Dubuque, 1 Wall. [68 U. S.] 175; Moran v. Commissioners, 2 Black [67 U. S.] 722; Maddox v. Graham, 2 Metc. [Ky.] 56; Butz v. Muscatine, 8 Wall. [75 U. S.] 575; Van Hostrup v. Madison City, 1 Wall. [68 U. S.] 291; Commissioners of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 537; Woods v. Lawrence Co., 1 Black [66 U. S.] 386; Bissel v. Jeffersonville, 24 How. [65 U. S.] 287; Butler v. Dunham, 27 Ill. 474; Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 83; Commissioners of Knox Co. v. Nichols, 14 Ohio St. 260; Mayer v. City of Muscatine, 1 Wall. [68 U. S.] 384; Rogers v. Burlington, 3 Wall. [70 U. S.] 654.

The supreme court has lately held recitals in bonds, issued by supervisors under an act of the legislature, binding upon the county as against bona fide holders and that want of compliance with the forms of law, or fraud by the agents of the county, could not be shown in defense. Town of Grand Chute v. Winegar [15 Wall. (82 U. S.) 373].

Compare, also, Luling v. Racine [Case No. 8,-603]; Goedgen v. Manitowoc Co. (June term, 1870) [Id. 5,501]; and Schenck v. Supervisors of Marshall Co. (Oct. term, 1866) [Id. 12,449].