## Case No. 8,603.

### LULING v. RACINE.

[1 Biss. 314;[1] 8 Am. Law Reg. 603.]

District Court, D. Wisconsin. April, 1860.

LAW AUTHORIZING CITY TO ISSUE BONDS, NOT A GENERAL LAW—BONDS VALID THOUGH ACT PUBLISHED AS PRIVATE ACT—PAYMENT OF INTEREST, &c., AFFIRMANCE OF BONDS.

1. Where the constitution of a state requires that all general laws shall be published before going into effect, a legislative act authorizing a city to issue bonds for stock in a railroad company, is not a general law within the constitutional provision, and the bonds are valid, although the act was not published before they were issued, and then in the volume of private and local acts.

2. The city issuing such bonds in pursuance of the act cannot controvert the constitutional power of the legislature to declare, in the body of the act, that it shall take effect immediately after its passage.

3. Where the city authorities paid the interest on the bonds for several years, and the inhabitants of the city elected commissioners to represent the stock received for the bonds, while they were passing as promissory notes payable to bearer, such acts are in affirmance of the bonds in favor of a bona fide holder, and he was not bound to look further.

4. An act authorizing a city to issue bonds payable in twenty years, allows the city to make the bonds payable in twenty years from the act, and the bonds are valid, although not made payable twenty years from their date.

At the trial of this cause it was shown that the legislature of this state passed an act, entitled, "An act to authorize the city of Racine to aid in the construction of certain railroads," approved February 10, 1853, and authorizing the city council to borrow on the credit of the city, three hundred and fifty thousand dollars for twenty years, in such sums as they might deem proper, on interest not exceeding seven per cent., payable annually in the city of New York, for the purpose of investing three hundred thousand dol-

lars of the same in the capital stock of a railroad company, authorized to construct a railroad from the city of Racine westerly towards the Mississippi river, and fifty thousand dollars to the capital stock of a company authorized to construct a railroad on the shore of Lake Michigan, or, in case the money should not be borrowed, to subscribe for so many shares of the capital stock of those companies in the proportion above named, and pay for the same in the bonds of the city, payable as above stated. The shares of the stock in the said railroad companies, and the dividends arising from them, were pledged for the payment of the principal and interest of the city bonds. The city council shall annually levy a tax upon the taxable property of the city, sufficient to pay the interest of such bonds, after deducting the dividends due the city on the shares of stock. The legal voters of the city, at each annual election, shall choose one railroad commissioner, who shall attend the annual meeting of the stockholders of said corporations, for the election of directors thereof, and shall be entitled to cast one vote for every share of stock which said city shall hold in said corporations, respectively. And this act shall take effect immediately. The act was first published in the month of October, 1853, in the volume of private and local acts, passed by the legislature of Wisconsin, in the year 1853. A resolution of the common council, authorizing the issue of bonds to the Racine and Mississippi Railroad Company, in pursuance of the act, was read. The bonds bear date March 15, 1853, and it was proven that they were all issued by the month of May following. The bonds are payable on the tenth day of February, 1873, to the Racine & Mississippi Railroad Company, or to the holder thereof, at their office in the city of New York, with interest thereon at the rate of seven per cent. per annum, payable annually on the tenth day of each February thereafter, for stock subscribed by the city in the said company. And the company agrees that this obligation, and all rights and benefits arising therefrom, may be transferred by general or special indorsement, or by delivery, as if the same were a note of a hand payable to bearer. The mayor of the city annexed certificate to each bond that it was issued by the city, in pursuance of a special act of the legislature of the state of Wisconsin, entitled "An act to authorize the city of Racine to aid in the construction of certain railroads," approved February 10, 1853, and by an unanimous vote of the city council of said city, passed March 15, 1853. Appended to each of said bonds are coupons, signed by the mayor of the city, for seventy dollars each, for the payment of the annual interest. The coupons for the interest payable in the years 1854, 1855, 1856, 1857 and 1858, were detached from the bonds. This suit was to recover the contents of the coupons payable in February, 1859, on thirty of

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the bonds. The bonds are not indorsed. It was conceded that the stock was issued and the railroad commissioners were elected to represent the city at the annual elections of the railroad company. It was contended at the trial that the bonds were illegal, and not binding on the city, as the act of the legislature had not been previously published, and because they are made payable before twenty years. The court, pro forma, overruled these points and directed the jury to find a verdict for [two thousand and one hundred dollars] [2] the amount of the face of the coupons. [With request to the counsel to move for a new trial, which was done. The motion having been argued is now to be disposed of.] [2] Motion for new trial.

Strong & Fuller, for plaintiff.
A. W. Farr, for defendant.

MILLER, District Judge. The constitution of this state directs that "the legislature shall provide by law for the speedy publication of all the statute laws, and of such judicial decisions made within the state as may be deemed expedient. And no general law shall be in force until published." The legislature did provide by law for the publication of all the statutes or acts, and in pursuance of the law, the act in question, with similar acts, was published. The act is particularly stated on the face of the bonds, by the certificate of the mayor, to be the authority under which they were issued by the city, and on the faith of the act in force immediately after its passage, the plaintiff purchased them.

Under the authority of the case of Board of Com'rs of County of Knox v. Aspinwall, 21 How. [62 U. S.] 539, the city is concluded by its representations on the face of the bonds, in regard to its authority for issuing them, and cannot go behind them, to show irregularities in the preliminary proceedings required by the act. In the opinion, the court says, "The act in pursuance of which the bonds were issued is a public statute of a state, and it is undoubtedly true that any person dealing in them is chargeable with a knowledge of it, and as the board were acting under delegated authority, he must show that the authority has been properly conferred. The court must therefore look into the statute for the purpose of determining this question, and upon looking into it we see that full power is conferred upon the board to subscribe for the stock and issue the bonds." And it is there decided that the purchaser of the bonds was not bound to look further for evidence of a compliance with the conditions to the grant of the power. In the case of Royal British Bank v. Tarquand [6 El. & Bl. 327], cited in the opinion, the court says: "We may take it for granted that the dealings with these companies are not like dealings with other part-

nerships, and that the parties dealing with them are bound to read the statute, and the deed of settlement. But they are not bound to do more." I do not think that the supreme court intended, by the words "public statute," to convey the idea that the act under which the bonds were issued was a general law affecting the whole people of the state, but a statute publicly passed by the legislature, according to the constitution of the state.

It is the duty of courts to enforce statutes, as prescribed by the law-making power, and to put such construction upon them as will carry into effect their object. It must be a very clear and unequivocal case, to induce a court to pronounce an act of the legislature unconstitutional or invalid. It is by no means the duty of a court of justice so to construe a statute as to retard its operation, or to affect contracts made in pursuance of it. The universal practice of the state government has been to consider acts similar to the one under consideration of the character of special acts in force from and after their passage, and to publish them according to the law, for that purpose, in the volume of local or private acts. And the general opinion of jurists and citizens is, that legislative acts similar to this one are grants of power to municipal corporations for local or special objects, and are not general laws affecting the whole people of the state. But in my opinion the question attempted to be raised cannot be considered a legitimate matter of defense. The obligor in the bonds cannot contest, by plea or otherwise, the constitutional power of the legislature to declare in the body of the act, that it shall take effect immediately after its passage. The legislature passed the act, and the state authorities published it, as a private local act. The law-making power of the state has concluded the question.

The act carried on its face all the legislative forms and requirements of a valid and constitutional statute, in force from the day of its passage. The legislature passed the act as a private or local act, to take effect immediately, and not from its publication. As such private act, the people and authorities of Racine accepted it. As such, the city council unanimously authorized the bonds to be issued, in pursuance of its authority. And the mayor and city clerk issued them under the corporate seal. The plaintiff was not bound to look beyond the act.

Even if the act should be considered by the court to be a general law, in the sense of the constitution, affecting the whole people of the state, and which should have been published before going into effect, contrary to the legislative declaration and intention, yet the contract was entered into by the city with this plaintiff, under a law acknowledged by all parties to be valid at the time this plaintiff parted with his money. This plaintiff is before the court as a bona

---

[2] [From 8 Am. Law Reg. 603.]

fide holder of the bonds and coupons, for a valuable consideration, innocently paid on the faith of the validity of the act, and the court cannot, by a technical construction of the act, release the city from the payment of a just debt. Under the authority of the act, the city issued the bonds, and on the faith of it the plaintiff purchased them, and the court will not allow a supposed technicality to defeat the recovery of a debt thus honestly contracted. If the question here attempted to be raised were available, any tax-payer of the city, by a proper application to the circuit court of Racine county, might have restrained the city from issuing the bonds.

I disclaim any conflict in this opinion with decisions of the supreme court of the state, as contained in manuscript opinions of judges of that court. That court, in those cases, considered the matter then decided a legitimate defense, which this court does not. It is not unusual for the courts of the states and of the United States, to disagree in their rulings. The rules of practice and the principles controlling the action and decisions of the different courts are in many instances very dissimilar, and in no respect binding on each other. It is the approximate duty of the supreme court of the state to construe the constitution and statutes of the state, and it is the bounden duty of this court to adopt such construction, in cases involving or requiring it, but not where the construction, contended for on behalf of a party, is not recognized as a legitimate matter of defense.

The act was approved February, 10th, 1853, [which authorized the city of Racine to issue the bonds payable in twenty years. The bonds are payable February 10, 1873],[3] and the coupons are payable on the 10th of February in each year. The bonds bearing date March 15, 1853, did not allow twenty years, nor one full year, for the first year's interest to run. This is not a suit for the principal of the bonds, nor for the first year's interest, and consequently that objection to these bonds is not tenable.

The city authorities put their own construction upon the act, and carried it out by issuing bonds as they did, and approved their acts by paying the annual interest on the bonds for several years after the publication of the act, and receiving certificates of stock of the railroad company as consideration for the bonds.

And as the people of the city approved of all this by electing commissioners, under the act, to represent the stock thus received for the bonds, at the annual elections of the company, while the bonds were in circulation as promissory notes, payable to bearer; I think they should not be permitted to object to the validity of their own acts. The people of the city of Bridgeport confirmed similar bonds to these. City of Bridgeport v. Housatonic R. Co., 15 Conn. 475. The motion for a new trial will be overruled and judgment entered on the verdict.

NOTE. The rulings of the supreme court of Wisconsin will be found in the following cases: The charter of the city of Janesville, authorizing a vote to be taken on the question of issuing bonds to aid in the construction of a railroad, was published in the private acts, and the certificate of publication attached to the volume was dated October 4, 1853, *held:* by the supreme court of Wisconsin, that the charter was first published by authority at the date of the certificate, and that it did not authorize the common council to pass an ordinance, and the people to vote on the question in July, nor the council to issue the bonds in August previous to the authoritative publication. Every person taking these bonds is chargeable with a knowledge of this want of authority. Cole, J., dissenting. Clark v. City of Janesville, 10 Wis. 136. The charter is a general law, within the provision of article 7, § 21, of the constitution of Wisconsin, which requires that "no general law shall be in force until published." The words, "general law," as here used, have the same meaning as "public act," in the ordinary acceptation, and they are convertible terms. Id. Bonds issued by the officers of a town pursuant to a vote of the people thereof, before the law authorizing such vote and issue of bonds was published, are void. Town of Rochester v. Alfred Bank, 13 Wis. 432, affirmed in Berliner v. Town of Waterloo, 14 Wis. 378. For a full citation of authorities on the subject of municipal bonds, see Schenck v. Marshall Co. [Case No. 12,449], decided by Drummond, J., June term, 1866. In Marcy v. Ohio [Id. 9,457], decided in the Northern district of Illinois, in March, 1873, Drummond, J., holds, that a bona fide holder of coupons payable to bearer, issued by a town by virtue of a special act of the legislature, is not bound to prove that every prerequisite has been complied with, and that a mere irregularity in the form of an election does not constitute a good defense as against him. Consult also Mygatt v. Green Bay. [Id. 9,998], and Goedgen v. Manitowoc County [Id. 5,501]. For an elaborate discussion of the bonds and contracts of municipal corporations, see Dill. Corp. §§ 370–426.

[See Case No. 1,213.]