———o———

## No. 3963.

### (Court of Appeal, Parish of Orleans.)

## STATE OF LOUISIANA ex rel WARREN EASTON vs. TREASURER OF BOARD OF SCHOOL DIRECTORS OF NEW ORLEANS.

1. An amendatory act operates to repeal all the sections amended not embraced in the amended form.
2. Act 167 of 1904, amending and re-enacting Sec 73 of Act No. 214 of 1902, removes all restrictions on the Board of School Directors of the City of New Orleans in the matter of adjusting and fixing the salaries of its officers, teachers and employees.

Appeal from Civil District Court, Division "D."

E. T. Florance, for Plaintiff and Appellee.

S. L. Gilmore, for Defendant and Appellant.

MOORE, J. The relator is, and has been for a number of years, the Superintendent of the Public Schools of the City of New Orleans.

His salary was originally fixed by the Board of School Directors of the City of New Orleans, which body shall hereinafter be referred to as the School Board, at the sum of twenty-five hundred dollars per annum.

On the 12th day of January, 1906, the School Board, by formal resolution to that effect, adjusted and fixed the Superintendent's salary at three thousand dollars per annum, payable in monthly installments of three hundred dollars.

The respondent is the treasurer of the City of New Orleans, and, *virtute officio,* the treasurer of the School Board, and with him was duly deposited by the School Board, its approved pay-rolls for the month of January, 1906, upon which rolls appears the Superintendent's salary for this month and for this sum ($300.00).

Due and proper demand having been made on the respondent by the relator for the payment of this salary and the former having refused to pay same, an alternative writ of mandamus went out, at the instance of the Superintendent, and directed to the Treasurer commanding the latter to comply with the relator's demand, or show cause to the contrary.

The relator, for answer, avers substantially, that the action of the School Board in the fixation of the Superintendent's salary at $3000 per annum was *ultra vires,* for asmuch as the School Board is inhibited by its constating legislative act from fixing the salary of that official at any sum beyond twenty-five hundred dollars per annum; and, hence, as the School Board's action in the particular stated, was and is null and void, it imposed, and imposes, no duty on the part of relator to pay same or any monthly prorata thereof.

There was judgment making the alternative writ peremptory and accordingly the respondent was ordered to pay the salary due for the month of January in the amount appearing on the pay-rolls for that month.

384

From this judgment the respondent appeals.

The statutes which concern the instant inquiry are Act No. 214, approved July 10th, 1902, entitled "An Act in relation to free public schools, and to regulate public education in the State of Louisiana xxxxx;" and Act No. 167 of 1904, which is an act amending and re-enacting certain sections of the Act of 1902, supra.

Section 73 of the Act of 1902, among other things not pertinent to the issues here, provides:

"Sec. 73 xxxx. That in addition to the powers and duties hereinbefore granted to and imposed upon parish boards, the powers and duties of said board of directors of the parish of Orleans shall be as follows:

First: It shall adjust and fix equitably the salaries of teachers and janitors, also of the Superintendent, Secretary, employees, and of such assistant superintendents, as it may deem necessary, for an efficient supervision of the schools, provided, that no salary to be paid by the school board under this section shall exceed the sum of twenty-five hundred dollars per annum."

The act of 1904 provides, *inter alia,* that section 73 of the Act of 1902, supra, shall be, and is hereby "amended and re-enacted so as to read as follows: * * *"

"Section 73, * * * That in addition to the powers and duties hereinbefore granted to and imposed upon parish boards, the powers and duties of said board of directors of the parish of Orleans shall be as follows:

"First, It shall adjust and fix equitably the salaries of teachers and janitors, secretary, employees, and of such assistant superintendents as it may deem necessary for an efficient supervision of the school."

It will be perceived that the amendatory ·act omits from its enumeration of those whose respective salaries the school board shall "adjust and fix," the *superintendent;* and that it also eliminates the *proviso* inhibiting the fixation of any salary in excess of twenty-five hundred dollars per annum.

On the statutes thus conditioned is bottomed the contention of the respondent that, *quoad* the superintendent, section 73, as originally enacted in 1902, is still extant.

The argument of the learned City Attorney, who is by law the legal adviser and representative of the School Treasurer, is, substantially, that there is no repugnancy between section 73; as originally enacted, and section 73, as amended and re-enacted, so far as it confers the power on the School Board to "adjust and fix" the salary of the Superintendent, and limits the amount of the salary to be paid him, forasmuch as the latter act deals with the salaries *only* of those enumerated therein and leaves undisturbed the power previously granted to the School Board under the terms of section 73, as it appeared in the Act of 1902, to "adjust and fix" the salary of the Superintendent, and, necessarily, leaving unrepealed by the amendatory act, the proviso limiting the amount of salary to be paid that official; and, that as the act of 1904 contains no clause repealing all law or parts of laws on the same subject matter, and as repeal by implication is not favored in law, no part or portion of section 73, as originally enacted, may be regarded as repealed by the Act of 1904, save only so much of the former as fixed a limit to the amount of salaries to be paid: "teachers and janitors, secretary, employees and of such assistant superintendents as may be necessary for an efficient supervision of the schools," thus leaving the entire original section 73 intact as to the Superintendent.

This argument cannot be admitted.

Its fundamental errors lie in the first place, in its erroneous assumption that there are two co-existing sections 73, to which may be applied the rule that where there exists several statutes *in pari materia,* the latter statute not repealing, expressly or by legal implication, the prior statute, they must be construed with reference to each other so that effect may be given to all of them, if this can be accomplished without defeating the obvious legislative intent by a strained construction of such statutes, or, by regarding them as statutes *in pari materia,* when they are not really so; and, in the second place, in its misappreciation of the legal distinction between a subsequent original and independent statute on the same subject matter of a prior statute, and a subsequent statute which is not original and independent in its dealings with a given subject matter of a prior

386

statute, but which simply amends and re-enacts a former statute cr section thereof.

Here there is no duality of existence of section 73, nor are there any two acts, or sections of acts, dealing with, or concerning, or restricting the amount of salary which the School Board may pay its superintendent. As we have seen, Act 167 of 1904 is not an original and independent enactment in the sense that it is legislating *in pari materia* with Act 214 of 1902. The sole purpose of the Act of 1904 is to perfect the original and independent enactment of 1902 by amending and re-enacting certain of its sections, section 73 among the number. This it accomplished in the manner indicated by Art 32 of the constitution of the state which provides that:

> "No law shall be revived or amended by reference to its title, but in such case the act revived or section as amended shall be re-enacted and published at length."

This constitutional provision is substantially the same in the constitution of all the states of this union. Its purpose is to prevent improvident legislation.

By a former prevelent form of amendatory legislation the amendatory act itself was unintelligible; words were stricken out or inserted, additions or substitutions made by mere reference to the place in the old law where the change should be introduced. It required an examination of the former act and a comparison with it of the new act to understand the change. Much confusion and uncertainty ensued from this practice. After repeated amendments in this manner there was much difficulty in determining the state of the law. The requirement was intended to remedy this evil by requiring the legislature changing the law *to state it entire in its amended form; the whole act, when revised or revised, or the whole section when amended.*

The legal operation and effect of such amendatory statutes on the statutes or sections of statutes which they purport to amend, are similar to the parliamentary motion "to strike out and insert," which may be entertained during the

legislative progression of a bill, and which, if the motion prevails, absolutely eliminates from the bill that which it originally contained and substitutes in its stead, that which it is proposed to insert.

Mr. Sutherland in his work on Statutory Construction, 2 Ed. 237-(133) p 442, states the rule thus: *The amendment operates to repeal all the section amended not embraced in the amended form.* The portion of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts or the changed portions are not to be taken to have been the law at any time prior to the passage of the amended act. The change takes effect prospectively according to the general rule. But the provisions of the prior law amended which continued in force after the passage of the amendatory act derive their force after the passage of the amendatory act, and as to the future the *old act or section is repealed in toto.* A repeal of that act would not revive the provisions as originally enacted. On the contrary, a repeal of the amendatory act would be a repeal of the provisions therein continued in force from the original act;" and he cites a number of authorities in support of this rule, among the number Arnoult vs. New Orleans 11 A. in which that Court, referring to a similar article in the Constitution of this State of 1852, said "It (the Constitutional Article) was intended that each amendment and each revival should speak for itself; should stand independent and apart from the act revived or the case," if the object was to revive an act, it should be "re-enacted" throughout; if the object was to *amend* an act then the "section amended" should be "re-enacted and published at length." In the case under consideration the object was to amend an act, and accordingly, all the "sections amended" have been re-enacted and published at length."

As the act of 1904 operates to repeal all of section 73 of the act of 1904 not embraced in the amended form, it is obvious that not only is the porviso repealed, but as the word "Superintendent" which appeared in the original is omitted in the revised form of Sec. 73, it is also repealed. Unless, therefore, there are other sections of the Act of 1902, or some other statute con-

ferring in express words the power on the School Board to appoint a Superintendent, and also to "adjust and fix" his salary, or unless such power may be fairly implied in or as an incident to the powers expressly granted and which are essential and necessary for the full and complete utilization of the powers which are granted, the School Board may not appoint a Superintendent, or if they may have power to appoint a Superintendent; they may have no power to "adjust and fix" his salary.

It is due to the City Attorney and to the Treasurer to say that the former at the bar of this Court disclaimed that the right of the School Board to appoint a Superintendent or its power to adjust and fix his salary was questioned or denied by them, or that either of them hoped or desired such result. But as this result is not only the logic of respondent's argument but of the situation itself, the cause cannot receive decision without considering this question.

The power to appoint a Superintendent is given by express provision of the act of 1902. Section 75 thereof provides: "That the said Board is authorized to appoint for the constant supervision and periodical examinations of the public schools of the Parish of Orleans, a competent and experienced educator to be designated as Superintendent."

There is no provision in this act, now that Sec. 73 is revived by the act of 1904, nor is there elsewhere in the law so far as we are advised, which, in *express words,* confers authority on the School Board to "adjust and fix" the salary of that officer.

Is such authority implied in the powers which are expressly granted? It may not be doubted that the School Board may, in addition to its main understanding, transact all such subordinate and connected matters as are, if not essential, at least convenient to the due prosecution of the former.

The rule is stated thus: It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no other. First, those granted in express words. Second, those necessary or fairly implied in or incident to the powers expressly granted, and third, those essential to the declared objects and purposes of the corporation.

389

Dillon on Municipal Corporation Vol. 1, Sec. 89. This author adopts as text the language of the Court in Bridgeport vs. R. R. Co. 15 Conn. 475-501, quoting this excerpt from the opinion pronounced by Judge Church: "In this country all corporations, whether public or private, derive their powers from legislative grant, and can do no act for which authority is not expressly given, or may not be reasonably inferred. But. if we were to say that they can do nothing for which a warrant could be found in the language of their charters, we would deny them in some cases, the power of self preservation, as well as many of the means necessary to effect the essential objects of their incorporation. And, therefore, it has long been an established principle in the law of corporations, that they may exercise all the powers within the fair intent and purpose of their creation which are reasonably proper to give effect to powers expressly granted. In doing this, they must, unless restricted in this respect, have a choice of means adopted to ends and are not to be confined to any one mode of operation."

As tersely put by Mr. Cooley in his work on Constitutional Limitations, Sec. 194, "Implied powers are such as are necessary in order to carry into effect those expressly granted, and which must therefore be presumed to have been within the legislative grant."

So, it has been held in Union Pacific Ry. Co. vs. Ryan, 2 Wyo. 40, where power is conferred upon a city to levy and collect taxes and no officer for the purpose is provided in the charter the authority to use and employ the necessary machinery to make the levy and collection will be inferred. So also, as examples given by Mr. Dillon, if a city has power to grade streets, the Courts will not enquire into the necessity of the exercise of it, or the refusal to exercise it, nor whether a particualr grade adopted, or a particular mode of executing the grade is followed. So if the city has power to build a market house, the Court cannot enquire into the size and fitness of the building for the object named. So, in the absence of fraud the Court refused to interfere by injunction with the action of the City Council in agreeing to rent a room for city purposes for 20 years and to

pay for the same in advance. Dillon Mun. Corps., Vol. 1, Sec. 94.

As is shown, the School Board is, in express words, authorized to appoint a Superintendent. The section of the act so empowering the School Board specially defines the action of the Superintendent and they are not only important, onerous and exacting, but such as to make it almost absolutely necessary for the School Board to execute and perform the special purpose of its creation. It is reasonable to suppose that the law maker contemplated that a "competent, experienced educator," which are the qualifications required by law for such officer, and whose entire time must, necessarily, be devoted to the discharge of the duties imposed on him by law as Superintendent, should serve without any salary, especially when the act provides for the pay of assistant Superintendents, and generally throughout the State for the appointment of salaried parish Superintendents?

Section 35, Act 214 of 1902. We think not.

Where the power to do any given thing is granted by the law, the means whereby this power may be exercised is likewise granted. Besides this the contemporaneous construction of the law by the officers charged with its execution, as also by the entire city authorities and its law officers, has been that the School Board had the authority to pay a salary to its Superintendent. The weight which is to be given to such contemporaneous construction is expressed in State vs. Comptoir National, etc., 51 A. 1281. In that case the Court said: "In this state it has been more than once held: "Common interpretation of statutes which have existed for a length of time will be considered, as it generally is, the correct interpretation." To the same effect is State ex rel etc. vs. Board, etc., 52 A. 223; and cases cited.

The respondent directs our attention to a bill of exceptions taken by him to the ruling of the trial judge in excluding as evidence, the Journals of the House and Senate which were offered, as contended by him, "for the purpose of showing the legislative history of the bill and the intention in adopting the bill as it presently stands upon the statute books in reference to the power of the board to fix the salary of the Superintendent of the public schools of this city."

The official Journals to be kept by the houses of the General Assembly are prescribed and regulated by the Constitution. They constitute official records and import presumptive evidence and courts may take judicial cognizance of them without their being formally offered in evidence, in order to ascertain the purpose and intent of the statute *when not clearly expressed.* Bernard, Sheriff, etc., vs .Gall & Pharr, 43 A. 959-962, and authorities cited therein. In the instant case the history of the bill while pending, and which bill subsequently became Act No. 167 of 1904, can serve no purpose whatsoever forasmuch as that act is free from all ambiguity. Besides this the question here is not one of interpretation or construction of the words of the act of 1904, but it a question, *vel non,* of repeal. But we have consulted three Journals and we find that they evidence the intention of the law maker to have been only what the statute of 1904 shows on its face, *id est,* the omission from the revised form of Sec. 73 of the act of 1902, of the word "Superintendent" and the proviso as to the limitation of the amount of the salaries to be paid the respective designated persons; except that it also shows that these omissions were the result of design rather than of accident as it appears from these Journals that the word "Superintendent" was stricken out of the bill on formal motion to this effect.

It is argued from this substantially that this section evidences the fact that the legislators were of opinion that this action would have the effect of maintaining the prior form of Sec. 73 to the extent of authorizing the School Board to "adjust and fix" the salary of the Superintendent, within, however, the purview of the proviso contained in the prior form of that section, which as to that official, would remain unrepealed; and that this was the evident motive influencing the law makers in so acting.

The answer to this is that the Journals do not indicate, nor can it be inferred from them, what were the opinions and the motive of the legislators; and that Courts can give little or no weight—on questions of Constitution—to the opinions of individual legislators or to the motives of members who voted for the bill.

392

It is a general principle of law, as already stated, that an amendatory act operates to repeal all the section amended and not embraced in the amended form. This, and no other general principle of law ,will it be presumed, the law maker intended to disregard or change.

Any general principle of law may be changed, but it must be done in clear and expressed terms by legislative actions.

It follows from what we have said that the judgment appealed from is not error and it is, therefore, affirmed.